JULIA A. WOODWARD *vs.* HOWARD W. SPURR & another.

Bristol. October 29, 1885. — February 27, 1886.

A wife is not entitled to prove, against the estate of her husband in insolvency, a claim for money lent by her to him from her separate estate, and used by him in his business, and for the amount of which she holds his promissory note; and the St. of 1884, *c.* 293, providing for the proof of equitable liabilities against insolvent estates, does not apply.

BILL IN EQUITY, filed June 27, 1885, alleging that the plaintiff proved, on June 6, 1883, a claim against the insolvent estate of Willard F. Woodward, one of the members of the insolvent firm of W. L. Gifford and Company, who were adjudged insolvent debtors on May 11, 1883; that the defendants were duly elected and appointed assignees of said insolvent estate, on June 8, 1883; that the firm was composed of William L. Gifford and Willard F. Woodward; that the claim had been allowed against the private estate of said Woodward; that the plaintiff was, and still is, his wife; that the assignees, on February 26, 1884, filed a petition in the Court of Insolvency, praying to have the claim expunged, on the ground that the same was allowed through illegality and mistake; that said court, on March 17, 1884, expunged said claim; that the plaintiff was married to the said Willard F. Woodward about thirty years ago; that between 1864 and 1882 she had accumulated several hundred dollars from her sole and separate earnings, which she had deposited in the Bristol County Savings Bank from time to time in her own name; that in January, 1882, she drew out $700 from said deposit and lent the same to her said husband, who used it in his partnership business; that, at the time of receiving said money, he gave the plaintiff the following promissory note: "For value received I promise to pay to Julia A. Woodward the sum of seven hundred dollars of money which I received of

her which was money of her own earnings, at six per cent. W. F. Woodward " ; — and that this was the claim of the plaintiff which was offered and allowed, and afterwards expunged, by the Court of Insolvency.

The prayer of the bill was, that the order of the Court of Insolvency might be declared null and vacated; and that the claim be allowed by said court.

The defendants demurred to the bill for want of equity.

The case was heard on the bill and demurrer by *C. Allen*, J., and reserved for the consideration of the full court.

*F. V. Fuller*, for the plaintiff.

*C. A. Reed*, (*J. H. Dean* with him,) for the defendants.

DEVENS, J.   No appeal lay to the Superior Court from the decree of the Court of Insolvency expunging the plaintiff's claim. Pub. Sts. *c.* 157, §§ 15, 35.   *Woodward* v. *Spurr*, 138 Mass. 592. Her remedy, if she is entitled to any, is therefore by this bill in equity addressed to this court, by virtue of its general superintendence and jurisdiction over proceedings in insolvency. While, where no special provision is made, this court may, " upon the bill, petition, or proper process of any party aggrieved, hear and determine the case as a court of equity," the rights of a party are to be governed by the provisions of the insolvent law. In the case at bar, the plaintiff is not a party aggrieved, unless the claim she makes against the estate of the insolvent is provable under that law.

The claim which the plaintiff complains to have been wrongfully expunged from proof by the Court of Insolvency was upon a note of hand made by a husband to a wife in consideration of a loan of money to him by her, from her own separate property, on his promise to repay the same.   The various statutes authorizing a married woman to make contracts as if she were sole have not in any way authorized contracts between husband and wife.   Pub. Sts. *c.* 147, § 2.   St. 1884, *c.* 132.   That a promissory note or other contract for the payment of money lent by the wife to the husband is absolutely void, has been repeatedly held. *Ingham* v. *White*, 4 Allen, 412.   *Bassett* v. *Bassett*, 112 Mass. 99.   *Fowle* v. *Torrey*, 135 Mass. 87.   *Whitney* v. *Closson*, 138 Mass. 49.   *Kneil* v. *Egleston*, 140 Mass. 202.   It is the contention of the plaintiff, that, in any proceeding to which the husband

is not necessarily a party, the claim on such a contract may be enforced. It was, however, held in *Ingham* v. *White, ubi supra*, that, where a wife had transferred a promissory note to a third person, which had been made by the husband to her, so that mere disability to sue arising out of the marital relation was removed, such person could not maintain an action.

This claim did not constitute such a debt as is described in the Pub. Sts. *c.* 157, § 26, nor could it have been verified by the oath as required in § 29. Had it been originally disallowed in the Court of Insolvency, and an appeal from such disallowance taken, which might have been done under § 36, it would have been impossible for the plaintiff to have set forth her claim " as in a declaration for the same cause of action at law," according to § 37. The necessary allegations would have shown that she had no valid claim. If proceedings were thereupon had as "in the pleadings, trial, and determination of the cause as in an action at law commenced and prosecuted in the usual manner," no recovery could have been had thereon.

The promissory note was a nullity, and it was only debts that were provable at law, and might therefore have been enforced by action, from which the discharge in insolvency released the debtor when the order appealed from was made. While this court, in the exercise of its supervisory power, is to hear and determine in equity the cases of parties aggrieved by the action of the Court of Insolvency, it was not intended thereby to enlarge the classes of claims which could be proved, or give to this court a wider jurisdiction than the Court of Insolvency, but to guide and govern that court in the jurisdiction committed to it.

We have discussed the case without reference to the St. of 1384, *c.* 293, which provides for the proof of equitable liabilities against estates in insolvency. This statute went into effect on May 28, 1884, and the order by which the plaintiff claims to have been aggrieved was made on March 17, 1884. It is this order, which, by this proceeding, the plaintiff claims to have declared null and vacated. She also seeks that it may be ordered that the claim made by her shall be allowed in the Court of Insolvency. Even if the order of that court was properly made at the time, so that it could not be said that the plaintiff was then aggrieved, it is urged that it is competent, under the

general superintendence that this court may exercise, when, by reason of a change in the law, the plaintiff should now be admitted to prove this claim, thus to direct, and for this purpose to reverse the order of the Court of Insolvency. In no other way, it is said, can the plaintiff's rights be protected, and no one will be injured, as there are funds which may be devoted to this claim. Assuming this, without so deciding, and also without discussing the question which might be suggested, whether it was intended that the recent statute should be so far retroactive in its operation as to affect proceedings pending at the time of its passage, it is to be determined whether there is any equitable liability on the part of the husband or his estate for money lent to him by his wife.

The case presents none of those elements which have been sometimes held to establish a trust. No sum of money was confided or entrusted to the husband by the wife to be kept as hers, nor did any come to his hands under any such circumstances that a trust in relation to it could be implied. By the statute, equitable liabilities were made provable against estates in insolvency and the estates of deceased persons represented insolvent, and all proceedings in reference to proof of such equitable liability were to be "the same in all respects as if it were a debt upon which an action at law might have been brought." It certainly was not the intention of the statute to create any new class of equitable liabilities, but to provide for the proof of such claims as had been recognized as possessing that character. The fact that the proceedings were to be the same as if the equitable liability was a debt upon which a common law action could be brought, shows that the claim must be of such a character that, when properly set forth as in equity proceedings, it would be seen that the claimant was entitled to an equitable remedy. We are aware that, under the United States bankrupt law, it was held that a wife might prove against the estate of her husband for money lent him. *Re Blandin*, 1 Lowell, 543. But it has been held in this Commonwealth, by a series of decisions, that, where money is lent by a wife to her husband, or conversely, there is no remedy, either at law or in equity, against him or against his estate. These decisions do not rest upon the ground of the marital incapacity to sue, but upon the ground that, by

the policy of the law, the attempted contract of borrowing and lending between husband and wife is void, by reason of their incapacity to deal with each other. To make a contract which is clearly invalid at common law the foundation of an equitable liability, is to disregard well-established principles. When contracts are themselves not authorized, validity cannot be imparted to them by affording a remedy for the breach of them through the medium of a court of equity. *Jackson* v. *Parks,* 10 Cush. 550. *Ingham* v. *White, ubi supra. Roby* v. *Phelon,* 118 Mass. 541. *Turner* v. *Nye,* 7 Allen, 176. *Fowle* v. *Torrey, ubi supra. Whitney* v. *Closson, ubi supra. Bridgman* v. *Bridgman,* 138 Mass. 58. *Bill dismissed.**

---

* A similar decision was made in Middlesex on the same day, in the case of

MARY A. BAILEY *vs.* GEORGE W. HERRICK & another.

APPEAL from a decision of the Court of Insolvency, disallowing the appellant's claim, which was for a sum of money lent to Arthur H. Bailey by the appellant, who was his wife, from her separate estate, and used by him in his business, offered for proof against his estate in insolvency.

The Superior Court found and ordered judgment for the assignees; and the appellant appealed to this court.

*S. W. Creech, Jr.,* for the appellant.

*A. H. Wellman,* for the assignees.

BY THE COURT. This case is governed by *Woodward* v. *Spurr, ante,* 283.

*Judgment affirmed.*